stating that it would not be complying with any subpoena due to the Motion to Stay Discovery. (Austin Decl. ¶ 14; Ex. 6 thereto). S&S further stated that if the Motion to Stay was denied, it would produce the requested agreements between it and Clare (redacted for sensitive information), on the condition that a protective order was entered with the Court. (*Id.*; *see also* Ex. 7 thereto).

On August 11, 2016, Kenyon responded to S&S's email noting that a protective order had been entered with the Court on August 5, 2016 (*see* Doc. No. 59). (Austin Decl. ¶ 15; Ex. 6 thereto). Kenyon further noted that Clare's Motion to Stay had not been decided and that discovery was proceeding (including Clare's own subpoenas for non-parties). (*Id.*). Additionally, Kenyon inquired as to S&S's continuing apparent objections to the remaining eight document requests that pertain to documents other than "agreements" between Clare and S&S. *Kenyon explained that, based on the discovery responses from Clare and statements made in Clare's motions, S&S is likely to be the sole source for many of the documents requested.* (*Id.*).

On August 18, 2016, S&S responded to Kenyon's email reiterating its objections and confirming its position that Kenyon must first seek discovery from Clare. (*Id.* ¶ 16; Ex. 6 thereto). S&S agreed, however, to produce the publishing agreements with Clare. (*Id.*).

On August 23, 2016, Kenyon again addressed the concerns reaffirmed by S&S and informed S&S that she had retained local counsel to assist with resolving this discovery dispute. (*Id.* ¶ 17; Ex. 6 thereto). Kenyon asked S&S to agree to produce the responsive documents by August 31, 2016 or else Kenyon would be forced to involve this Court. (*Id.*). S&S then notified Kenyon that S&S would stand by its objections. (*Id.* ¶ 18; Ex. 6 thereto). As such, Kenyon brings the instant Motion.[3]

---

[3] As set forth in the Austin Dec., Kenyon has in good faith conferred with S&S in an effort to resolve this without Court action. (*See* generally Austin Dec. and ¶ 5 thereof.)

5

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 26 states that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense" and "the information within this scope of discovery need not be admissible in evidence to be discoverable." FRCP 26(b)(1)). Additionally, methods of discovery may be used in any sequence and discovery by one party does not require any other party to delay its discovery. FRCP 26(d)(3).

Pursuant to Federal Rule of Civil Procedure 45, a party may serve a subpoena on a non-party for production of documents. FRCP 45. If the non-party objects, the party serving the subpoena may move to compel compliance with the subpoena. FRCP 45(c)(2)(B). Where information is sought from non-parties pursuant to a subpoena under Rule 45, the Court must weigh the probative value of the information against the burden of production on said non-parties. *In re Biovail Corp. Sec. Litig.*, 247 F.R.D. 72, 74 (S.D.N.Y. 2007). "Whether a subpoena imposes an 'undue burden' depends on factors including relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed." *Id.*

## ARGUMENT

This Court should compel S&S to comply with the Subpoena because the document requests are narrowly tailored to only seek documents necessary to develop Kenyon's proof, and because they are narrowly tailored to avoid an undue burden to S&S. Additionally, the only objections raised by S&S with respect to the narrowed document requests is that party discovery should be completed first, and as to one particular request, it may be difficult to find and that the parties may have some responsive documents in their possession already. Given the particular circumstances of this matter, and S&S's relationship to Clare, its objections are simply invalid.

A. **KENYON'S REQUESTS ARE RELEVANT AND DIRECTLY TIED TO THE CLAIMS OF TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION.**

Each of Kenyon's requests are relevant to the claims asserted in the case, specifically tailored to avoid overbreadth, and the requested documents are needed to present a complete record of Clare's alleged infringement and distribution of allegedly infringing works through her publisher, S&S. As explained in the Austin Declaration, the Tennessee Action concerns trademark infringement and unfair competition claims arising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and at common law.[4] "A matter is relevant if it encompasses 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Benavides v. Serenity Spa NY Inc.*, No. 15-CV-9189 (JLC), 2016 U.S. Dist. LEXIS 101751, at * 40 (S.D.N.Y. Aug. 3, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). When a court is asked to decide questions of relevance on discovery matters involving actions pending in another district court, it is directed to be "hesitant to pass judgment on what constitutes relevant evidence" and should "be permissive" if relevance is in doubt. *In re Honeywell Int'l, Inc. Sec. Litig.*, 230 F.R.D. 293, 301 (S.D.N.Y. 2003).

Request Nos. 2 through 8 of Kenyon's narrowly tailored requests clearly are relevant to the likelihood-of-confusion factors under the trademark infringement and unfair competition claims. The factors implicated include the similarity of the marks and Clare's intent in selecting

---

[4] To establish a claim for trademark infringement under the Lanham Act, the plaintiff must prove that (1) it owns a valid trademark; (2) the defendant used the trademark "in commerce" and without the plaintiff's authorization; (3) the defendant used the trademark (or an imitation of it) "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (4) the defendant's use of the trademark is likely to confuse consumers. 15 U.S.C. § 1114(a). "The touchstone of liability under § 1114 is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). As related to Kenyon's claims of unfair competition in the Tennessee Action, the Sixth Circuit uses "the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks." *Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006). To determine likelihood of confusion, the court considers the following eight factors: "(1) strength of plaintiff's mark; (2) relatedness of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing [] channels used; (6) degree of purchaser care; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion in selecting the mark." *Audi AG*, 469 F.3d at 542–43.

her marks. Additionally, Kenyon's requests related to the decisions to use the name "Shadowhunter" on her novels and website (Request Nos. 2, 4, and 5) are relevant to the marketing channels used and timing of the use of Clare's allegedly infringing mark. Finally, Kenyon's requests related to the misprinting of "Darkhunter" on Clare's work and any communications regarding confusion between Kenyon's and Clare's works (Request Nos. 6, 7, and 8) are relevant to evidence of actual confusion and intent. These requested documents are likely to reveal the decision-making process through which Clare infringed upon Kenyon's trademarks. Typical communications between a publisher and an author include discussions about character design, title choices, book covers, graphics, and proofs and approvals of the same. For example, S&S should have complete records of discussions and decisions regarding the use of "Shadowhunters" on the cover of Clare's novels, and documents regarding the process by which Kenyon's mark was printed on copies of Clare's work, all of which is highly relevant to the likelihood-of-confusion analysis.

Moreover, it is reasonable to assume that the records retained by S&S – a large international corporation – would not be entirely duplicative of Clare's. Additionally, any internal communications and records that relate to decisions made regarding the infringing acts alleged in the Amended Complaint would be in S&S's possession and control, not Clare's. Certain documents could also have significance simply because S&S possesses them, even if they are publicly available or in Clare's possession. Thus, Kenyon's request for documents from S&S is justified.

Request No. 9, relating to profits and payments made to Clare by S&S, is relevant to any damages calculations that will accompany a finding of infringement. Additionally, this request is sufficiently particular in that it concerns only Clare and the time period during which she may have received any payments from S&S.

8

**B.    S&S'S OBJECTIONS ARE NOT VALID AND THIS COURT SHOULD COMPEL COMPLIANCE WITH THE SUBPOENA.**

As noted above, S&S lodged general objections to Kenyon's first set of request for documents. The parties then agreed to narrow the list of requested documents. S&S did not object to the relevancy of the requests or assert that the narrowed requests presented a *specific* undue burden. Instead, S&S generally states that party discovery should be completed first to avoid any duplication (Request Nos. 2 – 7, 9) and that some of the requested documents would be "difficult to search for" and may already be in the parties' possession (Request No. 8).

While Kenyon recognizes that any request to a non-party comes with a burden, it is well-settled that a burden is not unreasonable simply because it falls on a non-party. *See Bridgeport Music Inc. v. UMG Recordings, Inc.*, No. 05 Civ. 6430 (VM)(JCF), 2007 U.S. Dist. LEXIS 91957 (S.D.N.Y. Dec. 17, 2007). In cases where non-parties object to production based on the difficulty of a search of documents, this Court has granted motions to compel. In *Bridgeport Music*, the non-party argued that it could take months to find the requested documents because his files were not well-indexed, the documents sought were old, and he believed they were "tangential" to the matter. *Id.* at *9-11. Despite his protests, the Court ordered the non-party to produce the documents as the relevance outweighed any burden and the age of the documents had no bearing on their connection to the case. *Id.* at *11 ("[D]iscovery should not simply be denied on the ground that the person or entity from whom it is sought is not a party to the action . . ." (quoting *Wertheim Schroder & Co. v. Avon Prods., Inc.*, No. 91 Civ. 2287 (PLK), 1995 U.S. Dist. LEXIS 79, at *19 (S.D.N.Y. Jan 9, 1995) (internal quotation marks omitted)). As such, for the reasons explained below, each of these objections should fail.

1. **Objections to Request Nos. 2 - 7 and 9.**

The only "burden" even suggested by S&S regarding Request Nos. 2 - 7 and 9 is that S&S should not be burdened with responding to such requests prior to the completion of party discovery, as these items "should be in the possession of [Clare]". (Ex. 4 to Austin Decl.). As explained in more detail below, S&S's preference to delay response is not a valid objection to the Subpoena.

It is undisputed that "there is no absolute rule prohibiting a party from seeking to obtain the same documents from a non-party as can be obtained from a party, nor is there an absolute rule providing that the party must first seek those documents from an opposing party before seeking them from a non-party." *Software Rights Archive, LLC v. Google, Inc.*, Nos. 09-017-JJF, 2:07-CV-511 (CE), CV 08-03172 RMW, 2009 U.S. Dist. Lexis 43835, at *6 (D. Del. May 21, 2009) (internal quotation marks omitted). By taking a contrary position during meet-and-confer communications, S&S relies on – and overstates – the conclusion in *Haworth, Inc. v. Herman Miller, Inc.*, 998 F.2d 975, 978 (Fed. Cir. 1993). (*See* Ex. 4 to Austin Decl.)

In *Haworth*, the Court of Appeals for the Federal Circuit found only that the district court had not abused its discretion in declining to compel a non-party to produce a specific settlement document of which both the defendant and the non-party were in possession, all while offering no reasonable justification for seeking the duplicative document specifically from the non-party. *Haworth*, 998 F.2d at 976–78. While this specific duplicative discovery was prohibited in *Haworth*, that court did not state a blanket rule regarding the order of discovery. *See Software Rights Archive*, 2009 U.S. Dist. Lexis 43835, at *6-7 (distinguishing *Haworth*).

S&S's reliance on this Court's decision in *Arista Records LLC v. Lime Group LLC*, No. 06 Civ. 5936 (KMW), 2011 U.S. Dist. LEXIS 20709 (S.D.N.Y. Mar. 1, 2011), is likewise misplaced. In *Arista Records*, this Court denied a motion to compel because the defendants had already received versions of documents they were also seeking from non-parties and provided no reason

10

for the Court to believe that the non-party had documents with additional information. *Id.* at *7-8.

Despite providing a string-cite of case law purportedly supporting its refusal to comply with the Subpoena, S&S failed to address *In re Honeywell*, 230 F.R.D. at 301. In *Honeywell*, this Court recognized that simply because requested documents could be in the possession of both the defendant and the non-party is not persuasive to deny a motion to compel production. *Id.* (granting motion to compel and stating that "documents in [the non-party's] possession may differ slightly from [the party's] copies," and that the non-party's "copies could include handwritten notes, and the fact that [the non-party] *has copies of documents itself can be relevant*" (emphasis added)).

In the instant case, Kenyon has not received any duplicative documents from Clare and has provided S&S clear explanations as to why S&S's records are likely to differ from Clare's. A sophisticated publishing company like S&S is likely to have different, presumably more complete, records than would an author. Indeed, some of the relevant communications may have never been possessed by Clare. Moreover, even S&S's own statements indicate that it may be the only source for such documentation. (*See, e.g.*, Def.'s Reply to Mot. to Stay, Doc. No. 57 (averring that S&S booked certain bus tours for Clare and that Clare was not involved in the decision to engage the vendor); Decl. Romanello, Doc. 58). S&S could also have communications relating to the use of intellectual property and specifically, trademark materials, at the direction of the author, or on its own, that may rise to the level of infringement. Finally, given the varying document retention policies of Clare, an individual, and S&S, a large corporation, it is likely the non-party will have the more well-defined set of documents. Under the circumstances, the completeness of the documents from Clare is "not readily verifiable," therefore receiving the documents directly from S&S – while party discovery continues – is necessary. *See Software Rights Archive*, 2009 U.S. Dist. LEXIS 43835, at *8.

11

Kenyon cannot accept S&S's demand to delay non-party discovery. She would be prejudiced by such delay as there is a risk that relevant documents could be lost or destroyed in the interim. Moreover, due to the limited time available for discovery in the Tennessee Action pursuant to the Case Management Order (wherein the discovery cut-off is set for December 16, 2016), if Kenyon waits until party discovery is complete to *begin* seeking documents from non-parties, she could entirely forfeit her opportunity to complete necessary discovery. As such, S&S cannot present evidence of undue burden that justifies delaying its response to the Request Nos. 2 - 7 and 9. Responsive documents should be produced.

### 2. Objections to Request No. 8.

S&S's specific objection to Request No. 8 is also unavailing. S&S claims that producing such documents relating to communications directed to S&S regarding confusion between Clare's book series and Kenyon's book series would be "difficult to search for" and should already be in the possession of the parties based on the filings made in the Tennessee Action. (*See* Ex. 6 to Austin Decl.). Kenyon's request, however, goes beyond what is publicly available and seeks to determine what S&S knew at the time of the alleged infringements. Moreover, these documents are likely to be exclusively in the possession of S&S. None of the public filings would include such information. This request bears directly on the claims at issue in the Tennessee Action and could determine Clare's liability. Responsive documents should be produced.

### CONCLUSION

For the foregoing reasons, Kenyon has shown that the documents requested in the Subpoena of non-party S&S are relevant to the instant case, are likely to be in the possession of S&S, are sufficiently narrow and particular, are not over-broad, do not encompasses a large time period, and that there is no undue burden placed on S&S in producing such documents.

Accordingly, the Court should grant Kenyon's Motion to Compel production of documents requested in the Subpoena, as well as such other relief this Court deems just and proper.

Dated: September 2, 2016
    New York, New York

Respectfully submitted,

LAW OFFICES OF DONALD WATNICK

By: _____
Donald E. Watnick
200 West 41st Street, 17th Floor
New York, NY 10036
Telephone: (212) 213-6886
Email: dwatnick@watnicklaw.com
    - and -
TONYA J. AUSTIN (pro hac vice application forthcoming)
FROST BROWN TODD LLC
150 3rd Avenue South, Suite 1900
Nashville, TN 37201
Telephone: (615) 251-5568
Email: TAustin@fbtlaw.com

*Attorneys for Plaintiff Sherrilyn Kenyon*

0132504.0632346   4813-8744-1207v5

13