**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------ X
SHERRILYN KENYON,                    :
                                     :
              Movant,                :
                                     :
      -against-                      :        No. 16 Misc. 327 (P1)
                                     :        **OPINION & ORDER**
SIMON & SCHUSTER, INC.,              :
                                     :
              Respondent.            :
------------------------------ X

**JOHN F. KEENAN, United States District Judge:**

Before the Court is Movant Sherrilyn Kenyon's ("Kenyon")

motion to compel Respondent Simon & Schuster, Inc. ("S&S") to

produce documents responsive to a subpoena pursuant to Federal

Rule of Civil Procedure 45(d)(2)(B)(i).

Kenyon's subpoena relates to an action for trademark

infringement and unfair competition that she brought in the

Middle District of Tennessee against Cassandra Clare ("Clare"),

Kenyon v. Clare, No. 3:16-cv-0191 (M.D. Tenn.) (the "Tennessee

Action").  Kenyon and Clare are both authors.  Kenyon allegedly

holds the trademark "Dark-Hunter" and uses it in one of her

series of novels.  In the Tennessee Action, Kenyon asserts that

Clare's use of "Shadowhunter" in her own series of novels

creates confusion with "Dark-Hunter."

S&S published a number of Clare's works at issue in the

Tennessee Action, but is not a party there.  S&S objects to

Kenyon's subpoena because it unduly burdens S&S by failing first to exhaust Clare as a source of the requested documents.

Kenyon's motion to compel is granted as modified below.

## I.  Background

### A.  Procedural History of the Tennessee Action

Kenyon initiated the Tennessee Action on February 5, 2016. Clare moved to dismiss the action on April 25, 2016, and Kenyon filed an amended complaint on May 16, 2016.  Clare moved to dismiss the amended complaint on June 22, 2016.  Clare's motion to dismiss remains sub judice. (See Decl. of Thomas B. Sullivan in Opp'n to Sherrilyn Kenyon's Mot. to Compel ¶ 6, ECF No. 9 [hereinafter Sullivan Decl.]; id. Ex. A at 4-9, ECF No. 9-1.)

On April 8, 2016, the Middle District of Tennessee entered an Initial Case Management Order setting the discovery period to begin on May 18, 2016, and fact discovery to close on December 16, 2016. (See Decl. of Tonya J. Austin in Support of Pl. Sherrilyn Kenyon's Mot. to Compel Simon & Schuster, Inc. to Comply With [FR]CP Subpoena and for Sanctions Ex. 3, at 5, ECF No. 3-3 [hereinafter Austin Decl.].)  The Initial Case Management Order explicitly declined to stay discovery "during dispositive motions, unless ordered by the Court." (Id.)

On July 27, 2016, Clare moved the Middle District of Tennessee to stay discovery pending a decision on her motion to dismiss. (See Austin Decl. ¶ 10; Sullivan Decl. Ex. A at 8

(Docket No. 48).)  Clare's motion to stay also remains sub judice. (See Austin Decl. ¶ 10; Sullivan Decl. Ex. A.)

On August 5, 2016, Kenyon and Clare entered into a protective order in the Tennessee Action. (See Sullivan Decl. Ex. A at 8 (Docket No. 59).)

## B.  The S&S Subpoena

On May 25, 2016, one week after the opening of discovery, Kenyon issued document requests to Clare. (See id. Ex. B at 24, ECF No. 9-2.)  That same day, Kenyon served a subpoena duces tecum on S&S by certified mail. (See id. Exs. C-D, ECF Nos. 9-3 to -4.)  S&S timely objected (including to service by certified mail), and Kenyon recognized that she had inadvertently attached an incorrect version of Exhibit A to the subpoena, which contained her specific document requests.  Kenyon served a corrected Exhibit A to the subpoena by email. (See id. Ex. E ¶ 13, at 4, ECF No. 9-5; Austin Decl. Ex. 4, ECF No. 3-4.)  On July 8, 2016, S&S timely objected to Kenyon's corrected subpoena (including to service by certified mail). (See Austin Decl. Ex. 5 ¶ 13, at 3, ECF No. 3-5.)

Between July 8 and July 19, 2016, Kenyon and S&S met and conferred, which resulted in Kenyon narrowing her requests from fifteen to nine. (See id. Ex. 6, at 5-7, ECF No. 3-6.)  These nine requests are as follows:

1. All contracts and license agreements including amendments, relating to the novels in the Shadowhunter Series (as defined in the Request No. 2 of the revised Exhibit A), to the extent those novels were published by Simon & Schuster.

2. Documents and communications with Cassandra Clare, or her representatives or agents, regarding the decision to include "A Shadowhunter Novel" on the redesigned cover of certain books within the Shadowhunter Series.

3. Author questionnaires completed by Cassandra Clare, or her representatives or agents, and any documentation provided to Simon & Schuster by same regarding the visual representation of the characters in the Mortal Instrument Series.

4. Documents and communications with Cassandra Clare or her representatives or agents, regarding the decision to redirect www.mortalinstruments.com to www.shadow hunters.com.

5. Documents and communications with Cassandra Clare regarding the design of the website www.shadowhunters.com, including the decision to obtain the domain name "shadowhunter.com."

6. Communications with Cassandra Clare, or her representatives or agents, relating to the 2009 use of "Darkhunter" on the cover of the novel City of Bones.

7. Documents and communications regarding Cassandra Clare's review and/or approval of the 2009 cover of the novel City of Bones containing the word "Darkhunter," including documents and communications relating to the final "mechanic" approved for printing the cover.

8. Documents and communications directed to Simon & Schuster regarding confusion between the Shadowhunters Series and Sherrilyn Kenyon's series of books regarding Dark-Hunters.

9. Documents and communications relating to money paid to Cassandra Clare or her representatives, agents or assigns regarding the Shadowhunter Series (to the extent it was published by Simon & Schuster).

(Sullivan Decl. Ex. F at 2, ECF No. 9-6.)  On August 18, 2016, S&S agreed to produce documents responsive to Request No. 1, but maintained its objections to Request Nos. 2 through 9. (Austin Decl. Ex. 6, at 3-4.)  On August 23, 2016, Kenyon responded to S&S's objections and requested production of documents responsive to Request Nos. 2 through 9 by August 31, 2016. (Id. at 1-2.)

When no response came, Kenyon moved to compel S&S to comply with the subpoena in this Court on September 6, 2016.

## C.  Discovery from Clare

In a June 22, 2016 declaration in support of her motion to dismiss, Clare stated that her contracts with S&S "make clear (at § 12(b)) that '[f]inal decisions as to format, style of printing and binding, title, cover presentation, trade name, trademark, logo, imprint or other identification, and retail price and all other matters of sale, distribution, advertising and promotion of each Work shall be within [S&S]'s sole discretion." (See Reply Ex. 2 ¶ 3, ECF No. 14-2.)  Clare stated that she has no control over the marketing and sales of her works, (id.), that www.shadowhunters.com is not her website, and that review of www.shadowhunters.com's homepage "clearly demonstrates" that S&S operates it, (id. ¶ 4.).  Regarding the 2009 misprint (the subject of Request No. 7), Clare claimed that S&S prepared a "proposed joint apology" to Clare and Kenyon

where it "stress[ed] that Ms. Clare was not in any way responsible for the misprint." (Id. ¶ 8.)

On August 26, 2016, Clare produced 222 pages of redacted emails. (Austin Decl. ¶ 19.)

## II.  Discussion

Kenyon argues that her document requests on nonparty S&S are relevant, specifically tailored, and necessary to present a full case of Clare's alleged trademark infringement, unfair competition, and use of S&S to distribute infringing works.

S&S objects to Kenyon's document requests procedurally because Kenyon did not personally serve S&S.  Substantively, S&S argues that Kenyon's requests are unduly burdensome for a nonparty and cumulative and duplicative of requests to Clare.

Kenyon responds that S&S's nonparty status alone is not a sufficient burden to warrant quashing the subpoena, that S&S, as a large corporation, is likely to have a more complete set of documents than Clare, and that the risk of document destruction and the Tennessee Action's impending deadline for fact discovery justifies seeking discovery from nonparty S&S concurrent with Clare.

### A.  Applicable Law

Federal Rule of Civil Procedure 45 permits a party to request a subpoena from the clerk of an issuing court that commands the person to whom it is directed to "produce

designated documents, electronically stored information, or tangible things in that person's possession, custody, or control." Fed. R. Civ. P. 45(a)(1)(A)(iii).

### 1.  Service

"Serving a subpoena requires delivering a copy to the named person." Id. R. 45(b)(1).  "There is no Second Circuit case law interpreting the Rule 45 requirement of 'deliver[y]' as requiring personal service." Tube City IMS, LLC v. Anza Capital Partners, LLC, No. 14 Civ. 1783(PAE), 2014 WL 6361746, at *2 (S.D.N.Y. Nov. 14, 2014) (alteration in original) (quoting JPMorgan Chase Bank, N.A. v. IDW Grp., LLC, No. 08 Civ. 9116(PGG), 2009 WL 1313259, at *2 (S.D.N.Y. May 11, 2009)).

Traditionally, district courts in this Circuit have interpreted Rule 45 to require personal service. See, e.g., Agran v. City of New York, No. 95 Civ. 2170(JFK), 1997 WL 107452, at *1 (S.D.N.Y. Mar. 11, 1997) ("[T]he weight of authority is that a subpoena duces tecum must be served personally.").  More recently, recognizing that nothing in Rule 45's language itself calls for personal service, district courts have authorized alternative service that is reasonably designed to ensure that a witness actually receives a subpoena. See, e.g., Simmons v. Fervent Elec. Corp., No. 14 Civ. 1804(ARR)(MDG), 2016 WL 3661274, at *1 (Go, Mag. J.) (describing the trend as "growing" and collecting cases from the Eastern and

7

Southern Districts of New York); <u>JPMorgan Chase Bank, N.A.</u>, 2009 WL 1313259, at *2 (collecting cases from the Southern District of New York that held "that effective service under Rule 45 is not limited to personal service").

Courts that follow the recent trend do not give serving parties carte blanche.  These courts typically require the serving party to seek leave to serve by alternative means and to demonstrate a prior diligent attempt to personally serve. <u>See, e.g.</u>, <u>Simmons</u>, 2016 WL 3661274, at *1 ("Even those courts that have sanctioned alternative means of service have done so only after the plaintiff had diligently attempted to effectuate personal service."); <u>JPMorgan Chase Bank, N.A.</u>, 2009 WL 1313259, at *3 (granting a request for leave to serve by alternative means after serving party attempted personal service nine times). <u>But see Sheet Metal Workers' Nat'l Pension Fund v. Rhb Installations, Inc.</u>, No. 12 Civ. 2981(JS)(ARL), 2016 WL 128153, at *2 (E.D.N.Y. Jan. 12, 2016) (Lindsay, Mag. J.) (requiring compliance even when the serving party failed to show diligent attempts to personally serve because the commanded person "clearly received the subpoena as his attorney . . . requested two extensions of time to comply therewith").

## 2.  Enforcement

Rule 45 requires that the serving party "take reasonable steps to avoid imposing undue burden or expense on a person

subject to the subpoena." Fed. R. Civ. P. 45(d)(1).  "The court
for the district where compliance is required must enforce this
duty and impose an appropriate sanction—which may include lost
earnings and reasonable attorney's fees—on a party or attorney
who fails to comply." Id.

If the commanded person objects to the subpoena, "the
serving party may move the court for the district where
compliance is required for an order compelling production or
inspection." Id. R. 45(d)(2)(B)(i).  The court "must quash or
modify a subpoena that . . . subjects a person to undue burden."
Id. R. 45(d)(3)(A)(iv).

Additionally, "Rule 45 requests for production are subject
to the limits on discovery under Rules 26 and 34." Atwell v.
City of New York, No. 07 Civ. 2365(WHP), 2008 WL 5336690, at *1
(S.D.N.Y. Dec. 15, 2008) (citing Burns v. Bank of Am., No. 03
Civ. 1685(RMB)(JCF), 2007 WL 1589437, at *14 (S.D.N.Y. June 4,
2007) (Francis, Mag. J.)).  Rule 26 requires a court to "limit
the frequency or extent of discovery otherwise allowed by these
rules or by local rule if it determines that:  . . . the
discovery sought is unreasonably cumulative or duplicative, or
can be obtained from some other source that is more convenient,
less burdensome, or less expensive." Id. R. 26(b)(2)(C)(i).

### B.  Analysis

### 1.  Kenyon's Service Is Defective

Kenyon made no attempt to personally serve S&S and did not apply for authorization to serve by alternative means before sending the subpoena to S&S by certified mail.  Even considering the persuasive reasoning supporting the modern trend of authorizing alternative service, the weight of authority in this Circuit requires first a diligent attempt to personally serve the commanded person. See, e.g., Tube City IMS, LLC, 2014 WL 6361746, at *1-2 (granting motion for leave after six failed attempts at personal service); Ultradent Prods., Inc. v. Hayman, No. M8-85 RPP, 2002 WL 31119425, at *4 (S.D.N.Y. Sept. 24, 2002) (forgiving the serving party's failure to seek leave to serve by alternate means, but considering the "practical circumstances" supporting the serving party's actions in this case including two separate failed attempts at personal service when authorizing alternative service).

Kenyon's failure to first attempt personal service and her failure to seek leave to serve by alternative means before mailing the subpoena renders her service defective.  Although it seems pointless to require Kenyon to re-serve the subpoena given that S&S has received, reviewed, and partially complied with it, see Agran, 1997 WL 104752, at *1, the Court will not sanction Kenyon's departure from normal service requirements absent

10

sufficient justification.  Kenyon is directed to personally re-
serve the subpoena on S&S.

**2.  Kenyon's Document Requests Do Not Impose an Undue Burden**

S&S argues that Kenyon's document requests impose an undue
burden because of the amount of effort S&S would need to expend
in order to locate responsive documents.  In support of this
argument, S&S submits a declaration from a paralegal in S&S's
legal department. (See Decl. of Tracy Woelfel in Opp'n to
Sherrilyn Kenyon's Mot. to Compel, ECF No. 10 [hereinafter
Woelfel Decl.].)

The Woelfel Declaration states that S&S employs hundreds of
people in numerous departments and divisions. (Id. ¶ 5.)  S&S
maintains no central document repository system, and S&S's
departments or individual employees are responsible for
controlling their own files. (Id. ¶ 6.)  Therefore, S&S's search
for responsive documents would proceed as follows:  First, S&S
would need to identify the relevant departments and employees
for each book at issue. (Id. ¶ 7.)  Next, it would need to
conduct two searches—one of electronic documents by its
information technology staff and another of hardcopy documents
by employees. (Id. ¶ 8.)  Because electronic documents are not
maintained in any sort of order, S&S would need to perform
keyword searches to identify potentially responsive documents.
(Id. ¶ 10.)  S&S would then need to personally review these

potentially responsive documents to determine actual responsiveness. (Id.)  Actually responsive documents would then be subjected to a second review for documents containing any privileged information. (Id. ¶ 11.)  This could take weeks and involve numerous employees. (Id. ¶ 12.)

What S&S describes as an undue burden is merely the typical process for a corporation responding to document requests. See The Sedona Conference, The Sedona Conference Best Practices Commentary on the Use of Search & Information Retrieval Methods in E-Discovery, 2014 Sedona Conf. J. 217, 244 (2014) ("[I]n many cases, both automated and manual searches will be conducted, with automated searches used for culling down a universe of material to more manageable size (or prioritizing documents), followed by a secondary manual review process.")

In essence, S&S argues that even the normal burden of document production is too much for a nonparty when there exists some possibility that a party may have the documents.  Because S&S's burdensome argument is really an argument that Kenyon's requests are unreasonably duplicative or cumulative of discovery she seeks from Clare, the Court addresses it as such below.

### 3.   Kenyon's Document Requests Are Not Unreasonably Duplicative or Cumulative Nor Are the Documents Sought Available From a More Convenient, Less Burdensome, or Less Expensive Source

Rule 26(b)(1) sets the scope of discovery as

> any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The scope of discovery does not change based on party status, see id. R. 45 advisory committee's note to 1991 amendment ("The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34."); id. advisory's committee's note to 1970 amendment ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules."), although some courts have given special weight to nonparty status when considering whether the "the burden or expense of the proposed discovery outweighs its likely benefit." See, e.g., Arista Records LLC v. Lime Grp. LLC, No. 06 Civ. 5936(KMW), 2011 WL 781198, at *2 (S.D.N.Y. Mar. 4, 2011).

13

Determining relevance requires consideration of the substantive law underlying Kenyon's claims against Clare in the Tennessee Action.  The Sixth Circuit applies the same likelihood-of-confusion analysis to claims of trademark infringement and unfair competition. See AutoZone, Inc. v. Tandy Corp., 373 F.3d 786, 791 (6th Cir. 2004).  This analysis weighs eight factors to determine whether there is a likelihood of confusion, including:  (1) strength of the senior mark; (2) relatedness of the goods or services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) the intent of defendant in selecting the mark; and (8) likelihood of expansion of the product lines. Hensley Mfg., Inc. v. ProPride, Inc., 579 F.3d 603, 610 (6th Cir. 2009).

S&S points out that seven of Kenyon's eight remaining requests identify documents that Clare should possess:  Request Nos. 2, 4, 5, and 6 each seek "documents and communications" or "communications" with Clare; Request No. 7 seeks "documents and communications regarding Clare's review;" Request No. 3 seeks documents that Clare herself provided to S&S; and Request No. 9 seeks documentation substantiating Clare's compensation.  S&S argues that the remaining Request No. 8 seeks information regarding consumer confusion between "Dark-Hunter" and "Shadowhunter" that is either publicly available or more likely

14

to have been sent to Kenyon and Clare themselves rather than to S&S. Accordingly, S&S asks the Court to quash the subpoena because the documents Kenyon seeks from a nonparty are "unreasonably cumulative or duplicative or can be obtained from some other source [i.e., Clare or public resources] that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

Kenyon responds that S&S played a significant role in the events at issue in the Tennessee Action and that S&S's control over Clare's marketing and sales and the website located at www.shadowhunter.com establishes that S&S's documents will differ from Clare's documents. Moreover, Kenyon argues that it has received only 222 pages of emails from Clare and that Rule 26(d)(3) specifically rejects sequenced discovery.

Kenyon is correct that the status quo under Rule 26(d)(3) avoids sequenced discovery. But that subsection permits the court to order otherwise "for the parties' and witnesses' convenience and in the interests of justice." Fed. R. Civ. P. 26(d)(3). While the Middle District of Tennessee has made no such order, S&S's contention that this Court should rule that Kenyon's subpoena unduly burdens S&S until Kenyon can conclusively establish Clare does not possess the documents that Kenyon seeks is, in effect at least, a request for the type of order contemplated by Rule 26(d)(3). Accordingly, Rule 26(d)(3)

15

provides no persuasive grounds for compelling S&S's compliance with the subpoena.

S&S's relative access to relevant information and the importance of the sought-after discovery in resolving the issues, however, does provide persuasive grounds for compelling compliance.  Since the entrance of the protective order on August 5, 2016, Clare has produced just 222 pages of emails. (Austin Decl. ¶ 19.)  In support of her motion to dismiss, Clare testified (quoting her contracts with S&S) that S&S has sole discretion over the "[f]inal decisions as to format, style of printing and binding, title, cover presentation, trade name, trademark, logo, imprint or other identification, and retail price and all other matters of sale, distribution, advertising and promotion" of her books. (Reply Ex. 2 ¶ 3.)  She also testified that S&S operates the website located at www.shadowhunters.com and S&S took sole responsibility for the 2009 cover misprint. (Id. ¶¶ 4, 8.)  S&S's role as Clare's publisher with sole over the marketing and sales of her books and control over the www.shadowhunters.com website establishes that S&S in the best position to produce the documents sought in Request Nos. 2 through 8.

The Court is not persuaded that simply because a subset of documents—i.e., communications with Clare—may also be available from Clare, Kenyon's requests are unreasonably duplicative or

16

cumulative.  S&S, as the entity in control of the marketing and
sales of Clare's books and the www.shadowhunters.com website,
likely has the lion's share of documents responsive to Kenyon's
requests.  Rule 26(b)(2)(C)(i) does not require requests to be
circumscribed pens sharing no common ground.  It requires only
that the overlap not be "unreasonable."  The Court concludes
that de minimis overlap here is reasonable.

Separately, the Court is sensitive to the possibility that
documents responsive to Request No. 8 may be publicly available
or likely targeted Kenyon and Clare rather than S&S.  However,
because Clare's intent in selecting her mark is a factor in the
likelihood-of-confusion analysis, whether S&S received
complaints of confusion and when these complaints were received
are relevant facts themselves.

S&S's substantial role in the facts at issue in the
Tennessee Action makes the value of its documents significantly
greater than the normal burden of production, even though S&S is
not a party to the Tennessee Action.  Therefore, the Court
orders S&S to comply with Request Nos. 2 through 8 of Kenyon's
subpoena.

By contrast, S&S's position of control over the marketing,
sales, and the website at issue in the Tennessee Action does not
place it in a unique position from Clare with regards to Request
No. 9, which seeks "[d]ocuments and communications relating to

17

money paid to Cassandra Clare or her representatives, agents or assigns regarding the Shadowhunter Series (to the extent it was published by Simon & Schuster)." Kenyon has not yet established that Clare cannot produce documents and communications relating to money paid to her, and absent this showing, Clare remains a more convenient source for these documents. The Court quashes without prejudice Request No. 9 of Kenyon's subpoena.

## Conclusion

Subject to any subsequent order staying discovery in the Tennessee Action and Kenyon's re-service of the subpoena by personal delivery, S&S is directed to produce nonprivileged documents responsive to Request Nos. 2 through 8 and to provide Kenyon with a log for any responsive documents withheld on grounds of privilege within a reasonable time. Mindful of S&S's nonparty status, Kenyon and S&S are directed to meet and confer to decide upon a reasonable number of custodians and a reasonable list of keywords to search to apply for potentially responsive documents within three weeks of personal service of the subpoena on S&S. To help ensure that these lists remain reasonable, S&S may apply to the Court for cost-shifting if the costs of responding to the subpoena become too onerous. To the extent that the existing protective order permits, Kenyon is directed to describe the documents it has received or later receives from Clare to (1) provide a starting point for

18

appropriate custodians and keywords and (2) avoid duplicating

production of such documents.

Kenyon's motion to compel documents responsive to Request

No. 9 is quashed without prejudice because it is unreasonably

duplicative of documents sought from Clare.

**SO ORDERED.**

Dated:      New York, New York
            October 11 , 2016

                                    John F. Keenan
                         United States District Judge
                                   PART I

19